UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      Case No. 17-20529

v.                                         Honorable Nancy G. Edmunds

ANTONIO HICKS,

                Defendant.

_____/

### ORDER DENYING [25] [31] REQUESTS FOR PUBLIC DEFENDER AND DENYING [27] [32] MOTIONS FOR ORDER REDUCING SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant Antonio Hicks is currently in the custody of the Federal Bureau of Prisons at FCI Milan in Milan, Michigan. The matter is before the Court on Defendant's request for a public defender (ECF No. 25, 31) and his two *pro se* motions to reduce his sentence, filed under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239 (ECF No. 27, 32). The government filed a response in opposition to Defendant's motions. (ECF No. 38.) The Court has reviewed the record in its entirety and finds that a hearing is not necessary. For the reasons set forth below, the Court DENIES Defendant's motions.

### I.    Background

Defendant has a 30-year criminal history and a history of trying to evade law enforcement in this case. In 1988, 1996, and 1999 Defendant was convicted of felony drug dealing crimes. He was convicted of first-degree home invasion in 2001 and domestic abuse in 1994 and twice in 1995. He was convicted of assault and battery in

1994 and 2002. In 2013, he was convicted of assault, resisting, or obstructing a police officer. He was convicted of felony firearm in 2007 and failed to appear for a court date in 2016 after he was accused of domestic assault. (ECF No. 38 at 15-16.)

In the present case, Defendant pleaded guilty to possession with intent to distribute cocaine after he was caught numerous times with drugs and drug distribution materials. (*See* ECF No. 15.) A search warrant was executed at Defendant's house in August 2016. During the search, investigators found 12 small plastic bags containing approximately one gram of crack cocaine and two scales, among other things. Defendant admitted to flushing approximately 10 additional bags of crack cocaine as agents were entering the residence. He also admitted to receiving and selling small amounts of both crack cocaine and heroin each week. (ECF No. 38 at 2-3.)

As a result of the August 2016 search warrant, Defendant was charged with possession with intent to distribute a controlled substance. Three months later, as agents attempted to arrest him, Defendant fled on foot. As agents were chasing him, he threw a plastic bag containing approximately 13 grams of cocaine into the bushes. He was caught and admitted he returned to selling drugs only a week after the search warrant was executed. (*Id.* at 3.)

Following his arrest, Defendant agreed to cooperate with law enforcement and identify his suppliers and other drug dealers in the area. He signed a magistrate waiver and was released. Shortly after this, Defendant stopped answering his phone and cut off communication with agents. (*Id.*)

Several months later, police attempted to pull Defendant over for driving on a suspended license and for violating a personal protection order. As officers approached

Defendant's vehicle, he sped off and led police on a high-speed chase. He eventually pulled over and ran from the vehicle, throwing a bag on the ground as he fled. Inside the bag, officers found approximately 46 grams of crack cocaine wrapped in 75 individual baggies, multiple bags and wraps of heroin, and three scales used for weighing narcotics. Defendant was caught and officers found $3,353 in his shorts. (*Id.* at 3-4)

On October 22, 2018, this Court sentenced Defendant to 66 months imprisonment. (ECF No. 24.) Defendant is now 49 years old and has been in custody since July 30, 2017. He is currently incarcerated at FCI Milan where the Bureau of Prisons reports 12 active cases of COVID-19 among inmates and staff and 333 recoveries. *COVID-19 Cases*, Federal Bureau of Prisons (last updated Feb. 9, 2021), https://perma.cc/WXA9-73W9. Three inmate deaths have also been attributed to COVID-19 at this facility. *Id.* On May 21, 2020, citing the ongoing COVID-19 pandemic and his individual health concerns, Defendant wrote a letter to the Court asking that a public defender be appointed to assist him in applying for compassionate release. (ECF No. 25.) Three months later, Defendant filed his first *pro se* motion. (ECF No. 27.) He filed an identical motion one month later. (ECF No. 32.) In his motion, Defendant states he suffers from Type 2 diabetes, chronic kidney disease, and liver failure, co-morbidities that increase or might increase his risk of severe illness or death from COVID-19. He requests early release from prison under 18 U.S.C. § 3582 given his increased risk and the threat of infection with the novel coronavirus in the congregant confinement of a prison setting.

II.     **Analysis**

A.     **Compassionate Release**

The "compassionate release" provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons when there are "extraordinary and compelling" reasons to do so. *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Historically, only the Director of the Bureau of Prisons could bring such a motion, but this changed with the passage of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020). An inmate may now bring a compassionate release motion on his own behalf once he exhausts any administrative remedies or 30 days after requesting relief from the Bureau of Prisons. *Id.* at 1004 (citing *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020)).

The Sixth Circuit has instructed district courts to engage in the following three-step analysis when considering a compassionate-release motion: *First*, consider whether "extraordinary and compelling reasons warrant [a sentence] reduction." *United States v. Elias*, 984 F.3d 516, 518 (quoting 18 U.S.C. § 3582(c)(1)(A)). *Second*, "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id. Third*, "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id.* "If each of those requirements are met, the district court may reduce the term of imprisonment, but need not do so." *Id.* (quotations and citation omitted).

The policy statement referenced in step two is found in U.S.S.G. § 1B1.13 and presently only applies to motions brought by the Bureau of Prisons, not to inmate-filed motions. *Elias*, 984 F.3d at 519. Thus, when considering inmate-filed motions for

compassionate release, "district courts have full discretion" to determine what reasons are "extraordinary and compelling." *Jones*, 980 F.3d at 1111.

Here, the Government concedes that the first and second requirements for compassionate release have been met. *See Elias*, 984 F.3d at 518. Defendant properly exhausted his administrative remedies by submitting a request for release to the warden at FCI Milan on June 3, 2020 and waiting over 30 days before filing the present motion. (ECF No. 32 at 7, 38 at 4.) Additionally, Defendant's Type 2 Diabetes has been confirmed by the CDC as a condition that increases one's risk of severe illness from COVID-19. Accordingly, the Government agrees Defendant satisfies step two of the *Elias* analysis. (ECF No. 38 at 13.) Nonetheless, the Government maintains Defendant is a danger to the community and that his request for early release should be denied based upon a consideration of the 18 U.S.C. § 3553(a) factors. The Court agrees.

A Court's determination that the 18 U.S.C. § 3553(a) factors do not support relief is an independent basis for denying compassionate release. *Ruffin*, 978 F.3d at 1001. These factors require consideration of a defendant's history and characteristics, the nature and circumstances of the offense, the seriousness of the offense, the need to protect the public from further crimes of the defendant, and the need to promote respect for the law and provide just punishment, among other things. *See* 18 U.S.C. § 3553(a).[1] "District courts should consider all relevant § 3553(a) factors before rendering a

---

[1] Wrapped up in this analysis is also the Government's argument, based upon the now irrelevant U.S.S.G. § 1B1.13, that releasing Defendant would endanger the community. *See Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."). While a defendant is no longer required to prove "lack of dangerousness" to succeed on a § 3582(c)(1)(A) motion, the effect his early release would have on the safety of any other person or the community is incorporated into several § 3553(a) factors.

compassionate release decision . . . [b]ut 'as long as the record *as a whole* demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulate' its analysis of every single § 3553(a) factor." *Jones*, 980 F.3d at 1114 (emphasis in the original) (quoting *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)).

Turning first to Defendant's history and characteristics, the Court notes that Defendant has battled drug addiction throughout most of his life and commends him for addressing these issues while imprisoned. Nevertheless, Defendant's long history of drug and other criminal convictions and, more importantly, the nature and circumstances of this case weigh against Defendant's early release. Defendant was involved in regularly distributing crack cocaine and heroin. He was released from custody multiple times during the course of the investigation that led to his present conviction and each time, he returned to dealing. The drugs Defendant sold and his decision to flee from police when they attempted to detain him put his community at risk. Furthermore, even though Defendant typically sold small quantities of drugs, his repeated return to this illegal activity and the highly addictive and deadly nature of the drugs he sold increase the severity of his present offense. Defendant's previous probationary sentences, short jail sentences, and a two-year prison sentence did not deter him from reoffending. Accordingly, the need to promote respect for the law and provide just punishment also weigh against releasing Defendant early from his current 66-month sentence.

In sum, Defendant's health in the context of the COVID-19 pandemic, although concerning, is not sufficient to alter the weighing of the sentencing factors in any significant way and compassionate release is not appropriate.

### B.      Appointment of Counsel

The Court also declines Defendant's request to appoint counsel to assist him in requesting relief. The Supreme Court has held that a prisoner's post-conviction right to counsel extends only to his first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The decision to appoint counsel is within the discretion of the court, and appointed counsel is only deemed necessary where the interests of justice or due process are implicated. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). Appointment of counsel is therefore appropriate only if, given the difficulty of the case and the defendant's ability, the defendant could not obtain justice without an attorney, he could not obtain a lawyer on his own, and the assistance of counsel would provide him with a reasonable chance of winning. *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002).

Defendant has not demonstrated that appointment of counsel is appropriate in this case. His motion for compassionate release does not involve complex facts or legal doctrines that would prevent Defendant from effectively bringing the claim on his own behalf. The Court is familiar with the facts and circumstances of Defendant's case and the present motion provides all that is necessary in terms of evidence of exhaustion and Defendant's health. Therefore, Defendant's motion for appointment of counsel is denied.

### III. Conclusion

Based upon the foregoing, Defendant's motions to appointment counsel and his motions to reduce his sentence are DENIED.

SO ORDERED.

s/  Nancy G. Edmunds
Nancy G. Edmunds
United States District Court Judge

Dated: February 18, 2021

7

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 18, 2021, by electronic and/or ordinary mail.

s/  Lisa Bartlett
Case Manager